# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS W. MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 12 C 1942** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff Douglas W. Martin's (Martin) motion for summary judgment is denied, and Defendant's motion for summary judgment is granted. The decision of the Commissioner of Social Security is hereby affirmed.

## BACKGROUND

Martin filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on May 14, 2009. Martin contends that he has a history of health problems that include chronic headaches, neck and back pain, major depressive disorder, and borderline intellectual functioning. Martin alleges an

onset date of January 30, 2008, and indicates that he was insured for DIB purposes through at least June 30, 2008. After a hearing before the administrative law judge (ALJ), the claims for SSI and DIB were denied. Martin's request for review by the Appeals Council was denied, and Martin brought the instant action. Both parties have now filed summary judgment motions.


## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).


## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of

the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, he is not disabled." *Id.* In the instant action, Martin argues that the ALJ erred: (1) by making an improper RFC determination, (2) by improperly evaluating the opinions of Dr. Gene Neri, M.D. (Dr. Neri), Martin's treating physician, and (3) by making improper credibility determinations.

## I. RFC Determination

In the instant action, the ALJ found that Martin has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 20 C.F.R. 416.967(b). (AR 27). Pursuant to 20 C.F.R. 404.1567(b) and 20 C.F.R. 416.967(b),

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. 404.1567(b); 20 C.F.R. 416.967(b). In addition to being able to perform light work, the ALJ indicated that Martin can "occasionally climb ramps or stairs but

never climb ladders, ropes or scaffolds," that Martin can "occasionally stoop or crawl," and that Martin was "limited to no more than occasional interaction with the public." (AR 27). Martin argues that the ALJ erred in making the RFC determination (1) by failing to include limitations related to Martin's chronic headaches or provide an explanation for not including such limitations, (2) by failing to include limitations relating to Martin's intellectual and social functioning, (3) by failing to include limitations in standing or walking, and (4) by failing to include limitations relating to reaching and handling.

In determining an applicant's RFC, the ALJ "must evaluate all relevant evidence . . . including evidence of impairments that are not severe." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). An ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence." *Id* at 592 (citations omitted). An ALJ's decision is upheld "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review." *Id*. at 591-92 (citation omitted).


A.  Limitations Relating to Migraine Headaches

Martin contends that the ALJ erred by failing to include limitations related to Martin's chronic headaches or provide an explanation for not including such limitations in her RFC determination. As discussed above, the ALJ found that Martin had the RFC to perform light work with some exceptions. In discussing

Martin's RFC, the ALJ accurately indicated that Martin had experienced problems with severe migraine headaches for many years prior to Martin's alleged disability onset date, and that Martin had sustained full-time employment through 2006 notwithstanding his history of such headaches.  (AR 28).  The ALJ also extensively discussed Martin's visits to the emergency room for treatment of his migraine headaches in 2006 and 2008.  (AR 29).  In addition, the ALJ observed that Martin had worked in April of 2009 before sustaining injuries in a car accident.  (AR 29).  The ALJ also indicated that "there was little objective evidence" that Martin's headaches had worsened at any time near his alleged disability onset date.  (AR 30).  The ALJ accurately and thoroughly summarized the medical evidence in the record relating to Martin's severe migraine headaches.  The medical evidence in the record regarding Martin's severe migraine headaches supports the ALJ's determination that Martin's RFC is limited to light work with some exceptions.  In addition, the ALJ built an "accurate and logical bridge" from the evidence relating to Martin's severe migraine headaches to her conclusion regarding Martin's RFC, such that the court is able to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(internal quotations omitted)(quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).  Thus, the ALJ did not err with respect to considering the effects of Martin's severe migraine headaches on Martin's RFC.

B.  Limitations Relating to Mental Impairments

Martin argues that the ALJ erred by failing to include limitations relating to Martin's intellectual and social functioning in Martin's RFC.  The record reflects that the ALJ found that Martin had a mild limitation in activities of daily living, a moderate limitation in social functioning, a mild limitation in concentration, persistence, and pace, and no episodes of decompensation.  (AR 26-27).  The ALJ provided a lengthy analysis in support of her findings, which accurately relied on the evidence in the record.  *Id.*  In addition, the ALJ indicated that her findings with respect to the above-referenced functional areas were reflected in Martin's RFC. (AR 27).  Beyond that, in discussing Martin's RFC, the ALJ accurately recognized the findings of Dr. Glen Wurglitz, Psy.D (Dr. Wurglitz), who performed a consultative examination of Martin on September 22, 2009, and the ALJ provided a detailed analysis of how Dr. Wurglitz's assessment supported the RFC.  For example, the ALJ indicated that, according to Dr. Wurglitz, Martin "drove himself" to the examination with Wurglitz, "arrived on time," "walked slowly with an unremarkable gait, and did not use a cane or other assistive device to ambulate." (AR 30).  The ALJ also noted that Dr. Wurglitz diagnosed Martin with borderline intellectual functioning and a Global Assessment of Functioning of 61, which indicates "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and with some meaningful interpersonal relationships."  (AR 31).  In addition, although Dr. Wurglitz indicated that Martin had some difficulty repeating longer strings of numbers and subtracting

6

backwards, the ALJ accurately stated that Dr. Wurglitz has found Martin's performance on the mental status examination to be good, and that Martin "sustained focused concentration, demonstrated good judgment, and was successful in demonstrating an ability to classify and categorize according to similarities and differences." (AR 30, 688). Further, the ALJ also accurately noted that Martin's abstract thinking was "described as concrete" by Dr. Wurglitz. (AR 30). The ALJ determined that Martin's RFC is "limited to no more than occasional interaction with the public," which adequately addresses the evidence relating to Martin's mental impairments. (AR 27). The evidence in the record with respect to Martin's mental impairments supports the ALJ's determination regarding Martin's RFC, and the ALJ built an "accurate and logical bridge" from the evidence relating to Martin's mental impairments to her conclusion. *Young,* 362 F.3d at 1002 (citations and internal quotations omitted). Thus, the ALJ did not err by failing to include limitations relating to Martin's intellectual and social functioning in Martin's RFC.

### C. Limitations Relating to Standing or Walking

Martin argues that the ALJ erred by failing to include limitations in standing or walking. In support of his argument, Martin contends that the ALJ ignored Martin's and Dr. Neri's testimony regarding Martin's ability to stand and walk, did not properly consider whether Martin's allegations could be explained by his impairments, and failed to discuss how Martin's obesity could have exacerbated Martin's degenerative disc disease of the lumbar and cervical spine with

radiculopathy. The ALJ accurately summarized Martin's testimony regarding his symptoms and his abilities, as well as Dr. Neri's opinions and treatment records. (AR 28, 31-32). The ALJ explicitly found that Martin's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 28). For a number of reasons that were enumerated at length, the ALJ also found Martin's testimony not to be credible with respect to intensity, persistence and limiting effect of the symptoms. (AR 28). For example, the ALJ noted that Martin's back impairments were longstanding and preceded Martin's alleged disability onset date by a number of years. (AR 28). The ALJ also discussed Martin's MRI results in June of 2005 as compared to his MRI results in April of 2009, and indicated that Martin's "lumbar spine showed no worsening." (AR 29). The ALJ also discussed a CT scan taken in June 2008 after Martin fell into shallow water that showed "mild degenerative changes without evidence of a fracture or subluxation." (AR 29). In addition, the ALJ thoroughly discussed the physical complaints that Martin identified during a consultative examination with Dr. Pranjal Shah, M.D. (Dr. Shah) in September of 2009, and Dr. Shah's findings, which included that Martin had tenderness and reduced range of motion over the cervical and lumbar spines, but did not have any tenderness in the knees, or "swelling, erythema or deformity involving any of the joints." (AR 29-30). The ALJ also noted that Dr. Shah found that Martin's cranial nerves were intact, that Martin's motor strength in all extremities was 5/5 and sensation was intact in all extremities, that Martin could walk 50 feet without any assistance, and that Martin had a stiff gait but could bear weight without

any problems. (AR 30). The ALJ also thoroughly discussed the objective medical evidence and treatment records of Dr. Neri, as well as medical records obtained from the prison where Martin was incarcerated for a period of time. The ALJ noted that Martin "had repeated treatment for pain, based on subjective reports and was seeking pain medication." (AR 30). In addition, the ALJ indicated in her decision that she had considered Martin's obesity in combination with Martin's back and knee pain. (AR 26). The medical evidence in the record supports the ALJ's decision not to include standing or walking limitations in Martin's RFC. In addition, the ALJ built an "accurate and logical bridge" from the evidence to her conclusion regarding Martin's RFC. *Young*, 362 F.3d at 1002. Thus, the ALJ did not err by failing to include limitations relating to standing and walking in Martin's RFC.

### D. Limitations Relating to Reaching and Handling

Martin argues that the ALJ erred by failing to include limitations in reaching and handling or by failing to explain why the evidence did not support Martin's alleged limitations. In her decision, the ALJ thoroughly discussed the medical evidence relating to Martin's reported neck and shoulder pain. For instance, the ALJ noted the results of the June 2008 CT scan and also x-ray exams that showed no fractures or dislocations following Martin's accident. (AR 29). The ALJ also noted that in May 2009, Martin's CT scan was normal and Martin reported no neck pain. (AR 29). In addition, the ALJ extensively discussed Dr. Shah's findings from September of 2009, which included that Martin's extremities were normal, that

Martin had tenderness over the left shoulder and reduced range of motion over both shoulders, that his motor strength was 5/5 in all extremities, that his sensation was intact in all four extremities, and that he was able to grasp with his fingers and manipulate each hand without any problems. (AR 29-30). The ALJ also accurately and thoroughly discussed Dr. Neri's treatment records and opinions. (AR 30-32). The medical evidence in the record supports the ALJ's decision not to include reaching or handling limitations in Martin's RFC. In addition, the ALJ built an "accurate and logical bridge" from the evidence to her conclusion regarding Martin's RFC. *Young*, 362 F.3d at 1002 (citation and internal quotations omitted). Thus, the ALJ did not err by failing to include limitations relating to reaching or handling in Martin's RFC.


## II.  Treating Physician's Opinion

Martin argues that the ALJ erred in rejecting the opinions of Martin's treating physician, Dr. Neri. In general, "a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Schmidt v. Astrue*, 496 F.3d 833, 842-43 (7th Cir. 2007)(citations omitted). However, an ALJ is permitted to give less weight to a treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as [the ALJ] minimally articulates [her] reasons for crediting or rejecting evidence of disability." *Id.*

(internal quotations and citations omitted). In the instant action, the ALJ discussed Dr. Neri's opinions and his corresponding treatment records. (AR 31-32). The ALJ indicated that she afforded Dr. Neri's September 2008 opinion "little weight" because it appeared to be based on sympathy or Martin's subjective complaints. (AR 31). The ALJ accurately noted that Dr. Neri indicated in the same form that Martin had 5/5 strength in all of his extremities and in his hip, with lowered strength in the right shoulder and that other than a reduced pinprick, Martin's "neurological status was normal, including normal gait." (AR 31). The ALJ also indicated that she afforded Dr. Neri's September 2009 opinion "little weight" because it was given shortly after Martin was involved in an automobile accident. (AR 32). The ALJ further indicated that she gave Dr. Neri's 2011 medical source statement "little weight" because his opinions were not consistent with the treatment records, which showed that, in 2011, Martin was looking for a job and Dr. Neri found Martin's psychological, musculoskeletal and neurological symptoms to be normal, and that, in 2009, Dr. Neri found that Martin had no changes in condition and a normal exam. (AR 32). In addition, Dr. Neri's opinions were inconsistent with the opinion given by state agency physician Dr. Barry Free, MD (Dr. Free), which was affirmed by Dr. Richard Bilinsky, MD. The ALJ found that Dr. Free's opinion should be afforded great weight because it was "consistent with the medical evidence of record, his normal examinations and strong activities of daily living." (AR 32). Martin argues that the ALJ failed to properly consider the factors enumerated in 20 C.F.R. 404.1527(d) in deciding what weight to give Dr. Neri's opinions, but the ALJ

11

recognized that Dr. Neri was Martin's treating neurologist and discussed his opinions in light of the record medical evidence. (AR 31). The ALJ's failure to mention the length of Dr. Neri's treatment is not fatal to her analysis. Based upon the record, the ALJ's decision not to give controlling weight to Dr. Neri's opinion was reasonable and adequately explained. Therefore, the ALJ did not err in failing to give Dr. Neri's opinions controlling weight.

III. Credibility Determinations

Martin also argues that the ALJ erred in making her credibility determination. Although an ALJ's credibility determinations are given deference, that deference is "not unlimited. . . ." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation . . . and must support credibility findings with evidence in the record"); *see also Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)(stating that a court will reverse "[a]n ALJ's credibility determination only if the claimant can show it was 'patently wrong'"). The ALJ found that Martin's statements were not credible "to the extent they [were] inconsistent with the [RFC]." (AR 30). Martin contends that in making such a determination, the ALJ did not consider the factors required under 20 C.F.R. 404.1529(C), such as Martin's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, measures used to relieve pain, and limitations caused by symptoms. However, not only did the ALJ explicitly indicate in her decision that she considered such factors (AR 26-27), her thorough and

accurate discussion of the record demonstrates that her credibility determination with respect to Martin was based upon all of the required factors and all of the evidence of record. For example, the ALJ accurately discussed that Martin could independently perform the activities of daily living and that he provided for his mother's care after she suffered a stroke. (AR 26, 31). In addition, the ALJ thoroughly discussed the medical evidence of record and the medical opinions provided in determining that Martin's statements were not credible. Martin also argues that the ALJ's statement with respect to her credibility determination suggests that the ALJ first determined Martin's RFC and then rejected any allegations inconsistent with it. However, as discussed above, the record is replete with medical evidence to support the ALJ's determination regarding Martin's credibility. The fact that the ALJ used the phrase "to the extent they [were] inconsistent with the [RFC]" did not make her credibility determination patently wrong in view of the entire record presented to the court in this particular case. Therefore, the ALJ did not err with respect to her credibility determination. Based on the above, Martin's motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and the decision of the Commissioner is hereby affirmed.

## CONCLUSION

Based on the foregoing analysis, Martin's motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and the decision of the Commissioner is hereby affirmed.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 28, 2013